## Charles F. Perry et al., Appts., *v.* Nancy Perry.

Where, upon a bill in equity for an account, the master recommends a
decree for the plaintiff, and his report is confirmed by the court below, the
fact that in reaching his conclusions he disregarded considerable vague and
uncertain testimony which, if believed, would have applied more to amounts
claimed beyond what he found than to the amount found by him, is not
ground for reversing the decree at the instance of the defendant.

Under the evidence, a transfer of personal property held to be an absolute
gift *inter vivos* and not a *donatio mortis causa.*

Under the evidence, possession of a wife's chattels by her husband held
not to amount to a transfer of the title from her to him.

(Argued February —, 1887. Decided March 7, 1887.)

January Term, 1887, No. 304, E. D. Appeal from a decree
of the Common Pleas of Lackawanna County in favor of the
plaintiff in a bill in equity. Affirmed.

The bill alleged that the plaintiff, Nancy Perry, had owned property, real and personal, before her marriage to F. H. Perry; that after the marriage she allowed him to manage it and receive the income; that shortly before his death the defendants, his children by a former marriage, induced him to assign to them all his property, and that the property so assigned included some of that of the plaintiff.

The bill prayed that the defendants might be compelled to account for and turn over to the plaintiff all her money transferred to them by F. H. Perry, and also one third of all property transferred to them in fraud of the plaintiff's rights, as wife of F. H. Perry; and that the defendants might be enjoined from assigning, selling, encumbering, etc., any property transferred to them by F. H. Perry.

J. S. Short and J. B. Carpenter, debtors in a mortgage and note respectively, which the bill alleged so to have been assigned by F. H. Perry, were made defendants in the bill; and as to them the bill prayed an injunction to restrain them from paying any money on account of the mortgage and note.

A preliminary injunction was granted according to the prayers of the bill.

The defendants' answer admitted the marriage of F. H. Perry with the plaintiff, and that the plaintiff before the marriage was possessed of a separate estate, but denied that F. H. Perry managed her property or received the income thereof in any such manner as to render the estate of F. H. Perry liable to the plaintiff.

The answer also admitted the transfer of personal property by F. H. Perry to his children shortly before his death, but denied that there was any fraud connected therewith.

The cause was referred to Henry A. Knapp, Esq., as master, and his findings were as follows:

1. Mrs. Nancy Wall, now Mrs. Nancy Perry, plaintiff in this case, and F. H. Perry, were married on August 30, 1874. Both had previously been married, Mrs. Wall being the widow of Otis Wall, who died in 1859, without leaving children. The defendants, C. F. Perry and Emeline Stannard, wife of R. H. Stannard, are children of F. H. Perry by a former marriage.

2. F. H. Perry died intestate, upon April 14, 1885, having previously devested himself of all, or very nearly all, his prop-

erty in the following manner: sometime in February or March preceding, he transferred to his son, C. F. Perry, a note for $106, which he held against J. B. Carpenter, which is particularly mentioned in the seventh paragraph of plaintiff's bill; upon March 30, 1885, he transferred to his daughter, Emeline Stannard, a note for $239, which he held against her husband, R. H. Stannard.

Upon April 8, 1885, he assigned a mortgage which he held against J. S. Short, also mentioned in the sixth paragraph of plaintiff's bill, upon which about the sum of $2,000 was at that time unpaid, to his said son, C. F. Perry; and on the same day, by deed, which mentions the consideration of $900, he conveyed to his son, C. F. Perry, a house and lot in Factoryville, Pennsylvania, which he had previously purchased from the plaintiff.

These conveyances were made without valuable consideration, moving to said F. H. Perry from his said children; and although they were made while in apprehension of death, or by way of preparation for death, they do not appear to have been conditioned upon his death, but were absolute, and vested all the title of the assignor immediately in the assignees.

It does not appear to be clearly established just what the physical condition of F. H. Perry was when he made these conveyances. He had been in ill health for some few months previously; and about the time he made the conveyances he became impressed with the idea that life was short, and he took the action that he did in order to arrange his matters to his satisfaction, having in view the devesting of any distributive share which his widow might have in the articles of personal property mentioned, in case she survived him. He lived with the plaintiff up to within about two weeks prior to his death, when he was removed to the house of his daughter, Emeline Stannard, and her husband, R. H. Stannard, a few miles away.

This removal was not effected through any fraudulent purpose on the part of the defendants to induce him to convey his property as he did, but in order to afford him more adequate attention than he could receive, or was receiving, at his former home, as he needed the attention of a man.

3. There was no actual fraud on the part of the defendants in obtaining the conveyances mentioned.

Upon this state of facts the question of law is raised whether, as to the personal property so voluntarily conveyed, the plaintiff

can claim any distributive share therein under the intestate laws.

Under the authority of Pringle v. Pringle, 59 Pa. 281, and Dickerson's Estate, 43 Phila. Leg. Int. 76, the master is of the opinion that she cannot. In the former case, Judge SHARSWOOD uses these words: "In our law, no such gift, otherwise valid, can be impeached as a fraud on a man's wife or children. They have no legal right to any part of his goods; and therefore no fraud can be predicated of any act of the husband or parent to deprive them of the succession."

It is argued on behalf of the plaintiff that the gifts, being made in apprehension of death, are in their nature testamentary, and that the conditions of the act of 1833 regulating the making of wills must be applied to them. It is further argued that the distinction between a *donatio mortis causa* and a gift *inter vivos,* is that the former is made in apprehension of death, while the latter is not; and the gifts here established are consequently of the former class, and will not be sustained, because they convey all of the estate of the decedent. Headley v. Kirby, 18 Pa. 326, is relied upon as an authority for this position. While the point is not free from doubt, the master is of opinion that this case is ruled by Pringle v. Pringle, 59 Pa. 281.

A *donatio mortis causa* is that form of gift *inter vivos* which is expressly made conditional upon the death of the donor. It has been judicially declared to be a "gift *inter vivos,* subject to conditions." 2 Kent, Com. 13th ed. 448, note y, and cases there cited; Marshall v. Berry, 13 Allen, 43–46.

In Headley v. Kirby, 18 Pa. 326, it is distinctly recognized that such gifts form exceptions to our statute of wills; and the court in that case declined to sustain the gifts, more from the uncertainty which surrounded it and the lack of adequate proof of what the gift really was than from any solicitude for any class or classes of persons who might be entitled to succeed to the estate of the decedent. Here there appears no such uncertainty. An assignment of the mortgage was executed, acknowledged, delivered, and recorded, and the notes were passed to the donees. So far as the real estate is concerned, it is not questioned that at least the dower interest of Mrs. Perry still remains therein; and that point is not in controversy here; but as to the personal property, it is believed that the power of F. H. Perry over it was absolute, and that the gifts mentioned are properly classified as gifts *inter vivos,* upon which no fraud

can be predicated. Upon this branch of the case the following is found as matter of law:

(1) The gifts made by F. H. Perry to his children, mentioned in the second finding of fact, were valid, so far as they conveyed personal property belonging to the donor and not held in trust for his wife; and in the subject-matter of such gifts the plaintiff is entitled to no distributive share as widow of the donor.

In proceeding to consider the other branch of this case, the question whether the personal property conveyed by F. H. Perry to his children, as above detailed, was his own property or that of the plaintiff, the following matters of fact are found by the master.

[4. At the time of the marriage of Mr. and Mrs. Perry, or soon after, Mr. Perry was the owner in his own right of a claim against the bankrupt estate of Northrup Brothers of Clark's Green, amounting to about the sum of $1,500.

Upon this claim he afterwards realized about the sum of $1,200. Whether during the coverture he was the owner of any other property is too uncertain to become the subject of a finding of fact, but it is believed by the master that he was not.]

5. When Otis Wall died in 1859 he left (by will) to his widow, now the plaintiff, the use of his farm for her life, lying partly in Lackawanna and partly in Wyoming county. For many years past his farm has had a rental value of $500 per annum.

Certain other real estate was devised to her for the term of her life by the same will; and [it is believed that by some arrangement this property had been sold, and that the principal sum realized therefor was in the plaintiff's hands. This sum was about $1,239. She was entitled to the use of this sum during her life; but one Mr. Campbell appears to have been entitled to receive $825 of the same upon her death. It may be stated, therefore, that she was indebted to Mr. Campbell in the sum of $825, not drawing interest. This state of facts is believed to have existed at the time of the marriage of Mr. and Mrs. Perry, or soon after.

At the same time Mrs. Perry had in her own right at least $900 in money, which was loaned to various parties upon notes —all, it seems, to perfectly good parties, as it was all afterwards paid. She was also the owner of a house and lot in Factoryville, Pennsylvania, worth from $1,300 to $1,500.

6. In 1881 the Mr. Campbell, mentioned in the last finding of fact, being desirous of receiving or having secured to him the principal sum of money aforesaid, it was paid to him by F. H. Perry, and a deed was taken by said F. H. Perry from his wife, Nancy Perry, of her house and lot in Factoryville. This deed is mentioned in the eighth paragraph of plaintiff's bill, wherein it is alleged that the conveyance by plaintiff to F. H. Perry was without consideration. The sixth clause of defendants' answer admits the conveyance, but denies that it was without consideration. It is found as matter of fact that F. H. Perry voluntarily conveyed this property to C. F. Perry by deed dated April 8, 1885, six days before his death.

Upon the hearing no testimony was offered by plaintiff upon the matters alleged in regard to this property, and objection was made to the proof, by defendants, that F. H. Perry had paid $825 to Campbell, as the consideration of the conveyance to said F. H. Perry of this Factoryville lot. The ground of this objection was that the deed from Nancy Perry to F. H. Perry appears to be void in law, because it is the deed of a married woman, not joined by her husband; and the plaintiff does not ask any decree concerning the property. The deed from Mrs. Perry to her husband is not in evidence in this case.

[7. The plaintiff at the time of her marriage to Mr. Perry and during the coverture was a weak, delicate woman. Mr. Perry early impressed upon her mind that a married woman has no right in law to receive or pay out money. It is believed by the master that all her income or sums of principal paid during the coverture came to his hands. It is established beyond dispute that he received the rent paid by B. F. Rifenbury, tenant of the farm, after the coverture. This must have amounted to more than the sum of $1,500, allowing certain sums deducted. It is also established that he received $400 of the $900 which Mrs. Perry is shown to have had out at interest at the time of the marriage. While it is not clearly shown that he received the proceeds of his wife's farm from April 1, 1878, the date when Mr. Rifenbury left it, until his death, yet the testimony strongly points that way; and the master is of the opinion that he did receive it, as well as the other $500 of principal which was paid during the coverture.]

8. The personal property given by Mr. Perry to his children

shortly before his death, so far as the same is established by the testimony, may be stated as follows:

Mortgage against J. S. Short, unpaid ........$2,043
Note against H. R. Stannard ................  239
Note against J. B. Carpenter ...............  106
Note against James Frear or Keystone Academy ........ ......... ............  200
Cash in Scranton Savings Bank & Trust Company ...... ........ .........  250

Total ........ ..... .............$2,838

9. It is shown that a short time before the death of Mr. Perry an account was presented to him, of items paid out by Mrs. Perry for his use, amounting to about $25, which, after some consideration, was paid to her by J. V. Whitney, Esq., who was acting as legal adviser of Mr. Perry.

It may also be stated as matter of fact that Mr. Perry paid to Mr. Campbell in 1881, $825 to discharge his wife's indebtedness mentioned in the sixth finding of fact.

There is no other testimony showing payments made by F. H. Perry to his wife or for her use, of any of the sums received by him from her private estate. Without entirely crediting all the testimony concerning the scantiness of the living of Mr. and Mrs. Perry during the coverture, it is well established that their living was plain and inexpensive; and the master believes that Mr. Perry did not expend as much as the income of the farm in the support of himself and Mrs. Perry. They lived during the coverture upon the farm, or in the house of Mrs. Perry in Factoryville.

[From all the testimony the master is of the opinion, and states it as matter of fact, so far as such finding of fact can be predicated upon the evidence, that Mr. Perry received the whole or nearly the whole of the income of Mrs. Perry's estate during the coverture; that he also received the $900 which it was shown was paid during the coverture; that from these moneys he paid Mr. Campbell the $825, and supported himself and Mrs. Perry until the time of his death, and that the difference between the sum he received from the Northrup Brothers' bankrupt estate and the amount he turned over to his children, shortly before his death, represents the amount which he saved out of his receipts from her private estate.]

10. It is not shown that any of the money which Mrs. Perry permitted her husband to receive was intended as a gift to him.

Upon this state of facts what are the rights of these parties?

In Hamill's Appeal, 88 Pa. 363, it is held that where a husband receives the property of his wife, it will be presumed that he holds it in trust for her. WOODWARD, J., in delivering the opinion of the court, says: "But the objection has been made on the part of the appellees that no proof was made of any terms on which Mr. Hamill held the money, and that without some evidence of a loan, they were not required to show that it was a gift. The essential question is whether Mr. Hamill received the money or not. If he did, it will be presumed that he held it in trust for her. The mere possession of a wife's money is no evidence, since the act of 1848 was passed, that the title to it has been vested in the husband. Grabill v. Moyer, 45 Pa. 530; Gicker v. Martin, 50 Pa. 141; Bergey's Appeal, 60 Pa. 408, 100 Am. Dec. 578. No rights of creditors are involved in this litigation, and it is not to be taken for granted that Mrs. Hamill intended a gift to her husband for the eventual benefit of his children by a former wife."

In the opinion of the master, F. H. Perry was at the time of his death a trustee for his wife for the amount of her money which came into his hands, less the sum which he had expended for their living or for her use.

What was that amount?

It has been seen that he gave away $2,838 just before he died. Was this his money or that of his wife?

That the money of his wife came to his hands cannot be denied. That he had money of his own until he realized from the Northrup estate is very doubtful; his frequent declarations were that he had lost his all by the Northrup failure.

If he had other property, it does not appear that he used any portion of it in the support of himself and family—as the law would require that he should do before he resorted to the money of his *cestui que trust,* Nancy Perry, for that purpose.

Mr. Perry shortly before his death seems to have undergone a financial transformation; from a poor man who has lost his all by the Northrup failure, and is dependent upon the income of his wife's estate for his living, he suddenly becomes able to give nearly $3,000 in money or good securities to his children. From all the testimony the master deduces the conclusion of fact

that Perry had in his own right nothing but the amount which he realized from the bankrupt estate of Northrup Brothers; and that the amount given to his children above that sum was trust property money which he had received from his wife's estate, and which he held in trust for her.]

What amount did he receive from the Northrup estate? The testimony does not clearly show. The plaintiff claims that he only received $820; while by the defendants' showing $1,450 is the most probable figure at which the testimony points. Adopting the latter as the correct figure, it is evident that he gave to his children upon his death bed $1,388 more than he received from the Northrups. In the opinion of the master this furnishes one basis for arriving at the sum which the plaintiff should rightfully receive from his estate.

Let us now consider the subject from another standpoint, to wit: his receipts of his wife's money and expenditures for her, so far as they are disclosed by the testimony, and see how the account stands. On behalf of defendants it is argued that a husband is not liable for the income of his wife's separate estate received by him, for the reason that it is presumed that it entered into their yearly expenditures and enabled him to provide more bountifully for the family. While the cases cited support this general position, it cannot be held to apply to this case.

The weight of testimony shows that during the coverture the cost of living of Mr. and Mrs. Perry was not above $250 to $300 per year. Allowing $100 per year for matters not taken into account by the witness, the amount reaches $350 to $400. Adopting the larger sum as the correct one, and calling the net income of the farm $500, the following result is reached:

Ten years' profit of farm, at $100 per year......$1,000 00

Received by Mr. Perry, from Mr. Campbell, interest on $825, for three years.................    148 62

Received by Mr. Perry, of sums of principal belonging to his wife.......................    900 00

Total...........................$2,048 62

Less amount paid to Mr. Campbell to discharge indebtedness of wife at the time deed was taken by Mr. Perry of property in Factoryville........    $825 76

$1,222 86

By the above computation it will be seen that Mr. Perry is given credit for the amount which it is claimed that he paid as a consideration of his wife's property in Factoryville. This credit the defendants are entitled to; for, although no decree is sought or recommended concerning the property, and the sufficiency or validity of their deed cannot be passed upon in this proceeding, as the same is not in evidence, yet it must be borne in mind that their title is disputed by Nancy Perry, and that they are out of possession.

While a husband may not be ordinarily accountable for the interest or income of his wife's property, it is inequitable that he should be allowed to accumulate such income and give it to his children by a former wife, upon his death; and this injustice is emphasized by the fact that he has had his entire living from his wife's estate, and leaves his own property intact to his children, freed by his peculiar manner of distributing it from his widow's statutory portion.

The master is of the opinion that F. H. Perry was a trustee for his wife for at least $1,222.86, at the time of his death, and that the said sum had been invested by said trustee in the notes, mortgage, etc., which he gave to his children. It is the right of the plaintiff to follow these trust funds, they having been conveyed without consideration. The assignments and transfers made by F. H. Perry to his children, just before his death, were in fraud of his wife, and void, in so far as they conveyed this trust fund of $1,222.86, or the securities in which it had been invested by the trustee; and the said transfers, assignments, or conveyances should be decreed to be null and void in so far as they convey the amount named.

It is recommended [that a decree be made, requiring and directing J. S. Short and J. B. Carpenter to pay plaintiff the several amounts due upon the mortgage and note mentioned in the sixth and seventh paragraphs of plaintiff's bill, and authorizing the plaintiff to give proper acquittances and satisfactions to said J. S. Short and J. B. Carpenter for the amounts so paid; and ordering and directing the defendants, C. F. Perry, Emeline Stannard, and R. H. Stannard, to pay the plaintiff the said sum of $1,222.86 less the amounts which said plaintiff shall receive from J. S. Short and J. B. Carpenter] as aforesaid.

The court HAND, P. J., confirmed the report and entered a decree as recommended.

The assignments of error specified this action on the part of the court and also the action of the court in overruling the defendants' exceptions to the portions of the report inclosed in brackets.

*James H. Torrey* and *M. J. Wilson,* for appellants.—We rely mainly in this case on the principle, *Actore non probante, absolvitur reus.* The testimony to support the plaintiff's claim is vague, uncertain, and inconclusive.

It is necessary, for the peace of families and the protection of estates, that one standing in the confidential relation of a wife, should prove her right as a creditor with clearness. In such a case, especially where the husband leaves children by a former marriage, she must show by distinct and clear proof that the transaction was a loan from her own separate estate. Hause v. Gilger, 52 Pa. 412.

The findings of fact of a master, which are merely his inferences or deductions from other facts, will be freely reviewed. Kutz's Appeal, 12 W. N. C. 27; Phillip's Appeal, 68 Pa. 130–138.

Having assumed without evidence that Perry collected $500 per annum for ten years from the income of his wife's estate, the master is confronted with the legal presumption that the income of a wife's estate, received by the husband, is used in the support of the family. Bardsley's Estate, 7 W. N. C. 48; Cogley's Estate, 13 Phila. 308.

*S. B. Price* and *A. D. Dean,* for appellee.—We think the master erred in his first conclusion of law; and, by reason of that error, he materially reduced the amount of the decree which was made in favor of the plaintiff below.

He held that Mr. Perry had the legal right on his death bed to give away to his children all of his own estate, for the very purpose of thereby depriving his wife of her claim upon his estate under the intestate laws.

Neither Pringle v. Pringle, 59 Pa. 281, nor Dickerson's Estate, 43 Phila. Leg. Int. 76, applies.

Bouvier's Dictionary defines a gift *inter vivos* as "a gift which takes place when the giver is not in any immediate anticipation of death, which distinguishes it from a gift *mortis causa.*"

It is not necessary to a gift *mortis causa* that it should be ex-

pressly conditioned on the giver's death. The condition is implied by law. Wms. Exrs. 685*, 688*, and notes; Michener v. Dale, 23 Pa. 59; Wells v. Tucker, 3 Binn. 366–370; Nicholas v. Adams, 2 Whart. 17–22; 1 Lead. Cas. Eq. 852, 741*.

It is a fraud for a man secretly to dispose of all his property just before his marriage. Baird v. Sterne, 12 W. N. C. 205.

How much greater wrong was here perpetrated in depriving a wife of all share and participation in the husband's estate by giving it secretly to his children on his death bed?

The findings of facts by a master, approved by the court, will be set aside only for plain error. Kisor's Appeal, 62 Pa. 435.

The credit to be given to the witnesses must depend greatly on their appearance and conduct before the examiner, who was also master, and the impression created by their examinations and oral testimony. Sproull's Appeal, 71 Pa. 138.

Where the testimony is conflicting, although the merits may appear contrary to his finding, if it has been approved by the court below, as a general rule this court will not reverse. Kutz's Appeal, 12 W. N. C. 28; Morgan v. Morgan, 4 Sad. Rep. 451.

Money received by the husband from his wife's estate, since the act of 1848, is presumed to have been received for her. Johnston v. Johnston, 31 Pa. 450; Mellinger v. Bausman, 45 Pa. 522; Grabill v. Moyer, 45 Pa. 530; Gicker v. Martin, 50 Pa. 140; Young's Estate, 65 Pa. 105.

The answer in this case does not satisfy the legal requirements. It is a mere denial of the allegations of the bill.

It is a rule of equity practice that the defendant shall apprise a plaintiff, by the answer, of the nature of the case he intends to set up, and that he cannot avail himself of any matter of defense not stated in his answer, even though it should appear in his evidence. Brightly, Eq. Jur. § 676; 1 Dan. Ch. Pr. & Pl. 733, 740, and notes.

The bill and answer are part of the evidence. All affidavits, depositions, etc., previously made, read, or used in the case may be used before the master. Brightly, Eq. Jur. § 767.

PER CURIAM:

The court concurred with the master in the finding of facts. While much evidence was given, of a vague and uncertain character, it appears to have been disregarded in the conclusion at which both arrived. The learned judge says: "The uncertain

and vague character of the testimony applies more to amounts claimed beyond what the master has found than to the amount he has found."

An examination of the evidence satisfies us that this is correct. It it sufficiently clear to justify awarding the sums specified in the decree.

Decree affirmed and appeal dismissed, at the costs of the appellants.